UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                      Plaintiff

v.                                          Criminal Action No. 3:21-CR-00010

JUNIS L. PEGUERO                                              Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Junis L. Peguero ("Peguero") moves for "Compassionate Release Pursuant to 18 U.S.C. §3582(c)(1)(A) and U.S.S.G. Manual's Amendment 814, effective November 1, 2023" asserting his father is incapacitated and that he is the only available caregiver. [DE 175 at 855]. He also moves to file documents under seal asserting that the "documents contain very personal information."  [DE 176 at 866].  And finally, Peguero moves to supplement his motion for compassionate release with a "video demonstrating [his father's] current stage of his health and the fact that he is incapacitated."  [DE 179 at 911; DE 180].  The United States responded in opposition [DE 181] and Peguero replied [DE 182].  For the reasons below, Peguero's motion for compassionate release [DE 175] is **DENIED**, the motions to file under seal [DE 176] and to supplement [DE 179] are **GRANTED**.

I.      BACKGROUND

On November 30, 2022, Peguero plead guilty to (Count 1) conspiracy to commit health care fraud in violation of 18 U.S.C. §1349 and (Count 11) mail fraud in violation of 18 U.S.C. §1341 and 2, pursuant to a Rule 11(c)(1)(A) and (B) plea agreement. [DE 87; DE 88; DE 89 at 329; DE 96].  This was Peguero's third felony conviction.  [DE 111 at ¶¶ 58, 60].  He was previously convicted of importing 500 grams or more of cocaine and possession with intent to

distribute 500 grams or more of cocaine in his first felony conviction and felon in possession of a firearm in his second conviction. [*Id.*]. Additionally, Peguero committed the instant offense while under a criminal justice sentence for Fleeing or Evading Police; Wanton Endangerment, 1st Degree, Police Officer; Resisting Arrest; Reckless Driving, Meade Circuit Court, 14-CR-188. [DE 111 at ¶¶ 59, 62]. At the time of sentencing, he had 10 criminal history points placing him in a criminal history category V. [*Id.* ¶ 63].

In his sentencing memorandum and again at the sentencing hearing Peguero argued for a sentence of probation so he could continue to take care of his father and asserted that he was the only available caretaker. [DE 139 at 759; DE 149].

Specifically, Peguero argued his

…father has significant chronic medical issues caused by a stroke he suffered from in 2018 that left him paralyzed on the right side of his body and unable to speak. The elder Peguero also suffers from seizures, COPD, depression and vascular dementia. He is completely dependent on Mr. Peguero for cooking his meals, bathing and dressing him, and taking him to his numerous medical appointments. Due to his partial paralysis, Mr. Peguero has to physically carry his father to his vehicle for his medical appointments or when his father occasionally visits his sister. While Mr. Peguero enjoys a close relationship with two of his siblings and aunt, he cannot rely on them for the full time care that his father requires. One of his siblings is blind and another is in the Army and subject to being deployed at any time. Mr. Peguero is estranged from his paternal half-siblings in the Dominican Republic because they stole his father's money and property after his father had the stroke.

[*Id.*]

The Presentence Investigation Report (PSR) also addressed Peguero's father, noting that

[t]he defendant stated his father is currently in poor health as he suffers from seizures, chronic obstructive pulmonary disease (COPD), depression and Vascular dementia. He also suffered a stroke in 2018 and cannot speak or move the right side of his body. Juni resides with the defendant so that he can provide care for him. The defendant has been the sole care giver for his father since May 8, 2020. He cooks his meals, bathes and dresses his father, as well as taking him to medical appointments. According to information provided by defense counsel, the defendant has to carry his father to the vehicle when he has medical appointments or when they visit his sister. The defendant reported that his siblings rarely assist him in taking care of their father. One of his siblings is blind; another is in the Army and will be deployed soon; and some are estranged because they have stolen their father's money and property in the Dominican Republic.

[DE 111, ¶ 80].

Peguero's total offense level was 16 with a criminal history category of V. [DE 111, ¶¶ 47, 63]. His Guideline range was 41-51 months. [*Id.* ¶107]. Yet the Court departed downward 10 months based on general mitigating factors including Peguero's employment record, family ties and responsibilities to his father and his conduct on pre-trial release. [DE 158 at 819]. Peguero was sentenced on September 8, 2023, to 31 months in prison with a recommendation to the Bureau of Prisons ("BOP") that Peguero not be designated to report until at least March 7, 2024. [DE 154 at 796]. The Court made this recommendation so Peguero could locate a caregiver for his father and/or investigate obtaining Medicaid resources to cover the costs of a skilled nursing facility.

Peguero now moves for compassionate release again asserting that he is the sole caretaker for his father [DE 175 at 860-61], that he is not a danger [*id.* at 862], and that a reduction is consistent with the policy statement [*id.* at 862-63].

## II.    ANALYSIS

### A.    *Motion for Compassionate Release [DE 175].*

a.    <u>Exhaustion of Administrative Remedies.</u>

An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (describing statutory changes to exhaustion process). This exhaustion requirement is waivable, not jurisdictional—but becomes "mandatory" if the Government invokes it. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020); *United States v. Taylor*, No. 20-3642, 2020 WL 7383648, at *1 (6th Cir. Nov. 9, 2020). It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024).

Peguero asserts that he sent a request for sentence reduction to the FCI Coleman Warden on February 22, 2024, which was prior to his report date. [DE 175 at 857].   He indicates that it was sent "2024 by U.S. Postal Certified Mail (#9589 0710 5270 0969 2346 66)" and "was received on February 26, 2024." [*Id.*; DE 177 at 868-69]. BOP records do not contain Peguero's request or BOP's response. [DE 181-1].  Peguero was not housed at the facility when he sent his request, and the United States agrees that this is likely why Peguero's request and BOP's response is not found in the BOP records furnished to the United States.  [DE 181 at 918].  However, case law in this circuit indicates that exhaustion can be met where the request was sent to the Warden prior to incarceration.  *See United States v. Maxwell*, 567 F.Supp.3d 824 (S.D. Ohio 2021)(finding defendant satisfied administrative exhaustion requirement when defendant mailed request to the Warden prior to defendant reporting).

While the United States notes the lack of documentation in the BOP records, they do not request that Peguero's motion should be denied for failure to exhaust.  [DE 181 at 918].  Instead, the United States asserts denial is appropriate because (1) Peguero has failed to establish an "extraordinary and compelling circumstance" under § 3582, (2) his release would pose a danger

to the community, and (3) he has served less than half of his sentence.  [DE 181 at 918].  As a result, the Court finds that Peguero has met the exhaustion requirement and will address the merits.

      b.  <u>Sixth Circuit "Three-Step Inquiry."</u>

      "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

      After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

      The Sentencing Commission recently amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The updated policy statements "provide[ ] a non-exhaustive list of various circumstances that either alone or in combination qualify as

5

extraordinary and compelling reasons for a sentence reduction." *United States v. Whitworth*, No. 1:23-CR-561-4, 2023 WL 8190131, at \*2 (N.D. Ohio Nov. 27, 2023). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The § 3553(a) factors to be considered include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at \*5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d at 1114; *United States v. Ruffin*, 978 F.3d 1000, at 1008-09; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing alone, "does not rise to the level of an extraordinary and compelling reason for granting compassionate

release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir. Dec. 12, 2023); *Jackson*, 2023 WL 9023349, at *2 (citing *Ruffin*, 978 F.3d at 1004 (6th Cir. 2020)).

The defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 611 F.Supp.3d 395, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

> c. <u>No Extraordinary and Compelling Reasons Warrant Early Release – Family
> Circumstances.</u>

Peguero asserts that his status as the sole caretaker for his father [DE 175 at 860-61] is an "extraordinary and compelling" reason warranting early release.

Early release may be warranted if a defendant's immediate family member is "incapacitat[ed]" and the defendant is the only available or suitable caregiver. § 1B1.13(b)(3); *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (defendant bears burden to make this showing). Immediate family members include children, spouses and partners, parents, grandchildren, grandparents, and siblings. § 1B1.13(b)(3)(D). The Guidelines also allow for care of individuals who, though not immediate family members, have a "similar in kind" relationship with the defendant. *Id.*

In evaluating "incapacitation," courts have looked to the BOP guidelines for handling inmate compassionate release requests based on the incapacitation of a family member. *See, e.g., United States v. Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (D.N.J. Feb. 13, 2024); (*United States v. Collins*, 2020 U.S. Dist. LEXIS 5001, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020). The BOP guidelines have defined incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair." *Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (quoting *Collins*, 2020 WL 136859) (citing BOP

Program Statement § 5050.502)). When evaluating the incapacitation, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the family member, and a statement and documentation regarding the inmate's release plan. *Collins*, 2020 WL 136859, at *4 citing *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. 2019) and BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at *1).

The Court notes that "[i]n general, having a sick or aging parent is not an extraordinary circumstance to release a prisoner." *United States v. Brewer*, 2022 WL 1125797, at *2 (E.D. Mich. Apr. 15, 2022). While the Court sympathizes with any family dealing with sick and aging family members, such situation is not by itself extraordinary. *See, e.g., United States v. Combs*, No. 2:19-CR-138, 2023 WL 6997117, at *2 (S.D. Ohio Oct. 24, 2023) ("This Court has declined to find that a defendant's ailing parent constitutes an 'extraordinary and compelling reason' justifying release."); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("While the Court empathizes with the Ingram family's difficult situation and understands that Mrs. Ingram's medical conditions are no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' simply do not include Ingram's mother. Many, if not all, inmates, have aging and sick parents. Such circumstance is not extraordinary.").

As an initial matter, Peguero's role as caretaker for his father and his father's medical conditions were well known to the court at the time of sentencing. [DE 139 at 759; DE 149]. Moreover, they were considered at length in the sentencing hearing and that consideration in part resulted in a substantial downward variance. [DE 158 at 819]. In addition, the court even delayed Peguero's report date to allow him an opportunity to arrange proper care for his father. [DE 154 at

796].   As a result, Peguero's role as caretaker and his father's ailing health are not new developments; these facts were before the district court at the time of his sentencing. "But facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) (citing *Lemons*, 15 F.4th at 751); *United States v. Smith*, No. 3:21-CR-47-RGJ, 2024 WL 3656187, at *5 (W.D. Ky. Aug. 5, 2024).   The question for the Court is now whether Peguero has offered evidence as to how these conditions have worsened since his sentencing or whether the circumstances of his family have changed making him truly the only option to take care of his father.

Peguero asserts that none of his family members are suitable caretakers for his father.   In support, Peguero attaches several affidavits from his siblings and half-siblings, however, all but one of these affidavits, that of his fiancé, was completed and submitted to the court before sentencing.   [DE 177-2 (noting the dates are from 2022 and 2023 prior to sentencing)].   As a result, none of these affidavits show a change in situation that would warrant reconsideration of his role as sole available caregiver.

Peguero has two siblings: Xavier Peguero, age 35, and David Peguero, age 32.   [DE 111, ¶75].   His third sibling, William Peguero, was murdered in 1993, in Ohio.   [*Id.*].   Xavier resides in Ohio and is blind [DE 177-2 at 895].   David, who lives in Ohio, is a long-distance truck driver and suggested in 2022 that he did not have proper accommodations for his father.   [DE 111, ¶75; DE 177-2 at 893].

The defendant has a maternal half-brother, Pichy Guzman, age 50 who resides in Puerto Rico.   [DE 111, ¶75].   He also has five paternal half-siblings: Yeral Peguero, age 28; Castira De Rosa, age 25; Edward Peguero, age 50; and Michael Peguero, age 23.   Yeral, Michael, and Castira

reside in Florida. [DE 111, ¶75]. At the time of his affidavit, Yeral asserted that he was a single father of two children and worked outside the home eight hours a day. [DE 177-2 at 898]. Michael asserted in 2022 that he had numerous health issues, lived in a second story apartment and worked the nightshift. [DE 177-2 at 897]. Edward resides in North Carolina and, at the time of his affidavit in January 2023, he was scheduled for military deployment to the Middle East. [DE 177-2 at 896]. While no affidavit was submitted from Castira, Peguera asserts in his reply brief that, "she does not communicate with family members, works two jobs, and has two children taking care of them as a single mother." [DE 182 at 938].

Finally, Peguero provides the affidavit of his live-in girlfriend, who has been providing care, but he claims she works all day and she is too small to provide the necessary assistance for his mobility needs. [DE 177-2 at 899-900]. These issues were discussed at the hearing and Peguero was given an opportunity to find other care or supplemental care before his self-surrender date. Nothing in the motion addresses other supplemental sources of care for Peguero's father, or whether Peguero's father qualifies for Medicaid or skilled nursing care or other full time care services. *Collins*, 2020 WL 136859, at *4; *United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020). These factors are fatal to his motion.

Further, the motion fails to provide any new information, not already considered by the Court at the time of sentencing to show that something significant has changed. The status of all Peguero's siblings and his fiancé were considered at sentencing. Additionally, a review of the medical records provided does not show any sudden change in his father's medical condition that would somehow change the Court's analysis. [DE 177-1 at 871-91]. These medical records reflect chronic conditions all known by the Court at the time of sentencing. As stated previously, "facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason

warranting a subsequent sentence reduction." *McKinnie*, 24 F.4th at 588 (citing *Lemons*, 15 F.4th at 751).

       d.   <u>Section 3553(a) Factors</u>

This Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. Section 3553(a)'s factors include:

> The nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a)(1-2). A court need not "specifically articulat[e]" every single Section 3553(a) factor in its analysis. *Jones*, 980 F.3d at 1114 (internal quotation and citation omitted). Instead, the record "as a whole" must confirm that the pertinent factors were considered by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at 1112.

Here, the Section 3553(a) factors counsel against compassionate release. This is Peguero's third felony. [DE 111 at ¶¶ 58, 60]. He was previously convicted of importing 500 grams or more of cocaine and possession with intent to distribute 500 grams or more of cocaine and felon in possession of a firearm. [*Id.*]. Additionally, Peguero committed the instant offense while under a criminal justice sentence for Fleeing or Evading Police; Wanton Endangerment, 1st Degree, Police Officer; Resisting Arrest; Reckless Driving, Meade Circuit Court, 14-CR-188. [DE 11 at ¶¶ 59, 62]. Prior criminal justice sentences have not deterred Peguero from continued criminal activity.

Additionally, Peguero has served little of his sentence at this time. *See Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"); *United States v. Kincaid*, No. 3:10-CR-

00160-1 at *13 (E.D. Tenn. Oct. 29, 2019) (citations omitted), *aff'd*, 802 F. App'x 187 (6th Cir. 2020) ("[C]ourts have generally granted compassionate release only to defendants who have served a significant portion of their sentences."). A sentence reduction at this time would certainly create a disparity in sentences and not achieve the deterrence objectives of 18 U.S.C. § 3553(a).

After reviewing the Presentence Investigation Report ("PSR") and statement of reasons and judgment, the Court's sentence adequately reflected the seriousness of the offenses, promoted respect for the law, provided just punishment, afforded adequate deterrence of future criminal conduct, and protected the public from future crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). The Court's analysis on these factors remains unchanged from that at sentencing. This Court concludes that Peguero's crime, as well as his criminal history and repeated convictions all for different criminal offences (drugs, firearms, and now fraud), are of serious concern to the community. The Court therefore finds that the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against early release in this case.

### B. *Motion to Seal [DE 176].*

Peguero also moves "to have documents that are personal and associated with his Motion for Compassionate Release filed under seal. The documents contain very personal information." [DE 176 at 866]. While he does not designate which documents to seal, the court interprets this motion to include the documents set forth at DE 177 which Peguero filed along with this motion. Theses documents include personal medical records related to his father. [DE 177].

"The sealing of judicial documents and records is left to the sound discretion of the Court." *United States v. Kischnick*, No. 18-20469, 2020 WL 3172634, at *2 (E.D. Mich. June 15, 2020) (citing *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016)).

Here, the Court finds it appropriate to seal Peguero's personal documents and father's medical records to preserve her privacy interest in these documents. Peguero's records contain a great deal of private information that goes well beyond his compassionate-release motion to personal information related to family members. *See United States v. Sanders*, No. 1:20-cr-00366, 2022 WL 896668, at *3 (N.D. Ohio Mar. 28, 2022) (granting the defendant's ex parte motions to file exhibits that have personal medical information under seal because "[s]ealing the exhibits at issue preserves [the defendant's] privacy interest in his medical records"); *Kischnick*, 2020 WL 3172634, at *2 (concluding that a "motion to seal should be denied because the information Defendant seeks to seal forms the primary basis for the relief he seeks" (internal citation omitted)). Accordingly, the Court will direct the Clerk's Office to seal DE 177. *United States v. Banks*, No. 18-CR-20462-2, 2022 WL 2679417, at *7 (E.D. Mich. July 11, 2022).

### C. *Motion to Supplement [DE 179].*

Peguero also seeks to Supplement the record with a video of his father to demonstrate to the court the "current stage of [his father's] health" and that his father is incapacitated. [DE 179 at 911]. Peguero filed this motion before the United States' response and thus he asserts it does not prejudice the United States to supplement. [*Id.*]. Because these documents are relevant to the issues before the Court and because the United States had an opportunity to respond, Peguero's motion is granted, and the information was considered in determining his motion for compassionate release.

### III.   CONCLUSION

For all the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Peguero's motion for compassionate release [DE 175] is **DENIED**, and Peguero's motions to file under seal [DE 176] and to supplement [DE 179] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk's Office shall seal docket entry [DE 177].

Rebecca Grady Jennings, District Judge

United States District Court

September 6, 2024

cc:     Defendant, *pro se*

14